**SULLIVAN, KRIEGER, TRUONG,
SPAGNOLA & KLAUSNER, LLP**
Adam M. Tamburelli, State Bar No. 301902
*atamburelli@sullivankrieger.com*
Charles T. Spagnola, P.C., State Bar No. 144983
*cspagnola@sullivankrieger.com*
Eliot F. Krieger, State Bar No. 159647
*ekrieger@sullivankrieger.com*
444 West Ocean Boulevard, Suite 1700
Long Beach, CA 90802
Telephone: (562) 597-7070
Facsimile: (562) 597-7772

**ZIMMERMAN LAW OFFICES, P.C.**
Thomas A. Zimmerman, Jr. (*pro hac vice anticipated*)
*tom@attorneyzim.com*
Matthew C. De Re (*pro hac vice anticipated*)
*matt@attorneyzim.com*
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020
Facsimile: (312) 440-4180

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ALLISON TURNER,** and **ALLEN SCIOLI,** individually, and on behalf of all others similarly situated, | Case No. |
| | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF:** |
| Plaintiffs, | |
| | 1. California Consumers Legal Remedies Act; |
| | 2. California Unfair Competition Law; |
| vs. | 3. California False Advertising Law; |
| | 4. Michigan Consumer Protection Act; |
| | 5. Consumer Fraud and Deceptive Trade Practices Acts of the Various States and District of Columbia; |
| **BI MOBILE BREATH, INC., B.I. INCORPORATED,** and **SOBERLINK HEALTHCARE LLC,** | 6. Fraud; |
| | 7. Fraudulent Misrepresentation; and |
| | 8. Unjust Enrichment/Restitution. |
| Defendants. | |
| | **DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiffs ALLISON TURNER ("Turner") and ALLEN SCIOLI ("Scioli") (collectively, "Plaintiffs"), individually, and on behalf of all others similarly situated, by and through counsel at Sullivan, Krieger, Truong, Spagnola & Klausner, LLP, and Zimmerman Law Offices, P.C., bring this action against Defendants BI MOBILE BREATH, INC. ("BI Mobile"), B.I. INCORPORATED ("BI, Inc."), and SOBERLINK HEALTHCARE LLC ("Soberlink Healthcare"), as follows:

## NATURE OF THE CASE

1.     Defendants manufactured, marketed, and sold, and continue to manufacture, market, and sell, several models of breath alcohol testing devices ("Testing Devices").  Unlike traditional breath alcohol testing devices, Defendants' Testing Devices allow third-parties to monitor a Testing Device user's alcohol consumption remotely because the Testing Devices are portable, automated, and upload results to the internet in real-time.

2.     To allow remote monitoring, the Testing Devices employ cellular phone technology, cloud-based internet storage, and a high-resolution camera. When people use the Testing Device, their test results are uploaded to Defendants' Monitoring Web Portal along with a picture taken by the Testing Device's camera.

2

A third-party can then access the Monitoring Web Portal to verify the user's identity and test results.

3.     Due to the aforementioned features, the Testing Devices have become an increasingly popular breath alcohol testing device in the criminal justice and addiction treatment industries.  Defendants marketed and sold, and continue to market and sell, their Testing Devices to various drug and alcohol monitoring companies in these industries.  The monitoring companies will then provide monitoring services to consumers, oftentimes renting out the Testing Devices and acting as a third-party supervisor of users' test results.

4.     Defendants also marketed and sold, and continue to market and sell, their Testing Devices to the general public.  Defendants do not provide any monitoring services, but purchasers can create their own monitoring program using Defendants' technology and Monitoring Web Portal.

5.     In marketing and selling their Testing Devices to monitoring companies and consumers, Defendants portrayed, and continue to portray, their Testing Devices as being admissible and certified by the courts and by the United States Department of Transportation ("DOT").

6.     Contrary to these claims, the Testing Devices are generally not admissible at trial and have been deemed unreliable in court.  The Testing Devices are also not certified or approved by the DOT.  Indeed, the Testing Devices do not

appear on the DOT Conforming Products List as either an Alcohol Screening Device or an Evidential Breath Measurement Device.

7.    Defendants also claim that users of their Testing Devices can "easily establish sobriety at any time, in a dignified and discreet way."

8.    In spite of these representations, the Testing Devices frequently return error messages and fail to upload reports to the internet.   Defendants actively conceal these malfunctions from the public.

9.    Consumers purchase or rent Defendants' Testing Devices in reliance and based on Defendants' misrepresentations and omissions that the Testing Devices are certified alcohol screening devices, and that the Testing Devices will allow them to establish their sobriety at any time.

10.    Plaintiffs have been injured due to Defendants' deception in marketing their Testing Devices.

11.    As a result of Defendants' conduct, Plaintiffs have suffered financial damages resulting from their purchase or rental of Defendants' Testing Devices, and Defendants have been unjustly enriched by retaining these payments.

12.    Plaintiffs, on behalf of themselves and on behalf of a Class of similarly situated individuals, bring this lawsuit seeking injunctive relief, actual damages, and restitution, together with costs and reasonable attorneys' fees.

//

# PARTIES

13.     Plaintiff Turner is a natural person and citizen of the State of California.

14.     Plaintiff Scioli is a natural person and citizen of the State of Michigan.

15.     Defendants originally were doing business as Soberlink, Inc. ("Soberlink"), which was formed on or about 2010, and began manufacturing, marketing, and selling Testing Devices.

16.     On or about November, 2015, Soberlink sold a portion of its business to Defendant BI, Inc., and that portion of Soberlink's business began operating as Defendant BI Mobile.[1]

17.     The aforementioned sale transferred the assets and liabilities of Soberlink's criminal justice business to BI Mobile.  BI Mobile acknowledged this fact when it filed its Supplemental Corporate Disclosure Statement in the LoMonaco Case (LoMonaco Case, Dkt. # 82), identifying BI Mobile as the successor of Soberlink.

18.     Despite being a separate legal entity, BI Mobile is indistinguishable from BI, Inc.  For example, BI Mobile and BI, Inc. share the same directors and

---

[1] *See*, Supplemental Corporate Disclosure Statement filed in *LoMonaco v. Soberlink, Inc*., Case No. 8:15-cv-15-CJC-DFM (C.D. Cal. 2015) ("LoMonaco Case").

5

management personnel, who all operate out of the same principal place of business. Additionally, there is no website for BI Mobile, and all Testing Device services related to BI Mobile are offered on BI, Inc.'s website.[2]

19. After the aforementioned sale, the remaining operations of Soberlink that were not sold to BI, Inc. began doing business as Defendant Soberlink Healthcare.[3] Thereafter, the corporation Soberlink, Inc. was dissolved.

20. Based on the foregoing information, BI Mobile is a proper party to this action as it acquired all assets and liabilities relative to this matter from the entity formerly known as Soberlink. Moreover, BI, Inc. is a proper party to this action because it is an indistinguishable entity from BI Mobile, and controls all operations of BI Mobile as if they were those of BI, Inc.

21. Additionally, to the extent that the entity formerly known as Soberlink did not transfer all assets and liabilities via the aforementioned sale, Soberlink Healthcare is a proper party to this action, as a successor entity to Soberlink.

22. Defendant BI Mobile is a corporation existing under the laws of the State of Delaware. BI Mobile has a principle place of business located at 621 NW 53rd Street, Suite 700, Boca Raton, Florida 33487.

---

[2] http://bi.com/wp-content/uploads/pdfs/brochures/sl2.pdf
[3] http://bi.com/soberlink-inc-successfully-sells-criminal-justice-segment/

6

23.     Defendant BI, Inc. is a corporation existing under the laws of the State of Colorado.  BI, Inc. has a principle place of business located at 621 NW 53rd Street, Suite 700, Boca Raton, Florida 33487.

24.     Defendant Soberlink Healthcare is a limited liability company existing under the laws of the State of Delaware. Soberlink Healthcare has a principle place of business located at 16787 Beach Boulevard #211, Huntington Beach, California 92647. The identity of the members of Soberlink Healthcare is not publically-available information. However, given the California locale of the principle place of business, on information and belief, the members of Soberlink Healthcare are citizens of California.

25.     When the transactions and occurrences relative to this action occurred, Defendants were doing business as Soberlink, Inc., which was a California corporation with a principle place of business located at 10073 Valley View Street #146, Cypress, California 90630.  Although Soberlink, Inc., is no longer an entity that can be named in this action, Defendants still do business in Orange County, and the State of California.

26.     For purposes of clarity, the transactions and occurrences set forth herein occurred when Defendants were operating as a single entity in the form of Soberlink, Inc.  Therefore, the remaining allegations will refer to all Defendants as "Soberlink" as a single entity, when appropriate.

7

## JURISDICTION AND VENUE

27.     Jurisdiction over Defendants is proper because they conduct business within this District. Additionally, Soberlink Healthcare's principle place of business is located in this District. Therefore, Defendants have the minimum contacts necessary to fall under the jurisdiction of this Court.

28.     Pursuant to 28 U.S.C. § 1332, this Court has subject matter jurisdiction over this class action, because the amount in controversy exceeds $5 million as it seeks relief for a Nationwide Class, and some members of the Class, as well as Plaintiffs, are citizens of states different than Defendants.

29.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because this is the District in which a substantial part of the events or omissions giving rise to the claims occurred.

## SUBSTANTIVE ALLEGATIONS

### *Background*

30.     There are different ways to identify an individual's blood alcohol concentration.  The least intrusive method involves using a "breathalyzer" device to measure the concentration of alcohol in an individual's breath.

31.     Breathalyzers employ different technologies to determine the alcohol content of a user's breath.  In determining which technology to utilize, the

8

manufacturer of a breathalyzer must weigh the cost and portability of a technology against the accuracy of its results.

32.    Portable breath tests ("PBTs") typically test for the presence of alcohol using fuel cells or semiconductors. This breath testing technology is portable and less expensive, but also less accurate.  As such, PBTs are generally inadmissible in court as proof of intoxication, and are often used as threshold screening devices to determine if a more reliable test is necessary.  PBTs are also referred to as "alcohol screening devices."

33.    Evidential breath tests ("EBTs") utilize spectrophotometers—a more expensive and immobile technology—to test for the presence of alcohol.  As their name implies, EBTs are admissible in court as proof of intoxication because of their superior reliability.

34.    Traditionally, both PBTs and EBTs require an operator present to administer, witness, and ensure the validity of the test.

### *Soberlink's Testing Devices*

35.    Soberlink was founded in 2010 and began manufacturing, marketing, and selling Testing Devices.  According to its website, Soberlink has a presence in all 50 states and Canada.

36.    Currently, Soberlink produces two different models of its Testing Devices, the SL2 and the SLBLUE.

9

37.    Soberlink's Testing Devices are portable and employ the same fuel cell technology to determine the amount of alcohol in a user's breath as other PBTs.

38.    Unlike traditional breath alcohol testing devices, Soberlink's Testing Devices do not require a test operator to be present because the device automatically performs many of the tasks that an operator would traditionally oversee.  This allows for remote, third-party monitoring of the Testing Devices' results.

39.    The SL2 model features built-in cellular phone technology which uploads testing data to the internet.  The SL2 model also has a high-resolution camera to photograph the user.  When people use the SL2 Testing Device, their test results are automatically uploaded to Soberlink's Monitoring Web Portal along with a picture taken by the Testing Device's camera.

40.    The SLBLUE model works similarly to the SL2 model.  It has all of the same features, except instead of built in cellular phone technology, the SLBLUE model connects to a user's phone via a Bluetooth signal.  The connected phone then automatically uploads the testing data to the internet, just as the SL2 model does.  The user is unable to access the test results on the connected phone.

//

//

10

41.     Soberlink maintains a cloud-based service, called the Monitoring Web Portal, to store users' test results.  A third-party can access the Monitoring Web Portal to verify the user's identity and submitted test results.

42.     Due to these claimed features, Soberlink's Testing Devices are portable, automated, and upload results to the internet in real-time, allowing third-parties to monitor a Testing Device user's alcohol consumption remotely.

43.     In light of the foregoing, Soberlink markets the Testing Devices to private third-party monitoring companies for use in administering court ordered alcohol monitoring programs, such as those created by court ordered probation.

44.     Soberlink also markets the Testing Devices to individuals who want to record their alcohol consumption, such as for those engaged in child custody disputes.

### *Soberlink's False Claims of Certification*

45.     In Soberlink's marketing materials, and on Soberlink's website, Soberlink portrayed its Testing Devices as being "court-admissible and validated."[4]

46.     Soberlink also claimed that its Testing Devices were "DOT grade,"[5] "DOT certified",[6] and "evidential."[7]   "Evidential" is a category of DOT certification.[8]

_____

[4] *See*, Soberlink Marketing Materials, attached hereto as Exhibit A.

47.     Soberlink also used other terms in describing its Testing Devices, such as law enforcement grade,[9] evidentiary grade,[10] and professional grade.[11]

48.     Contrary to Soberlink's marketing representations, the Testing Devices did not have any of the claimed certifications and validations.

49.     Results from the Testing Devices are generally inadmissible at trial and have not been validated by any court system.  Broadly, the Testing Devices are PBTs, and results from PBTs are generally inadmissible in court as evidence of intoxication.[12]  More specifically, the Testing Devices have been deemed unreliable as evidence of intoxication, particularly because the Testing Devices' results have not been supported by scientific evidence or testimony.[13]

50.     The Testing Devices are also not certified or approved by the DOT. The Testing Devices do not appear on the DOT Conforming Products List as either

---

[5] *See*, Soberlink Marketing Materials, attached hereto as Exhibit B.
[6] *See*, Soberlink Marketing Materials, attached hereto as Exhibit C.
[7] *See*, Soberlink Marketing Materials, attached hereto as Exhibit D.
[8] *See*, Conforming Products List of Evidential Breath Measurement Devices, 77 Fed. Reg. 35747-51 (June 14, 2012).
[9] *See*, Soberlink Marketing Materials, attached hereto as Exhibit E.
[10] *See*, Soberlink Marketing Materials, attached hereto as Exhibit F.
[11] *See*, Screenshot of Soberlink website, attached hereto as Exhibit G.
[12] *See*, Donald J. Ramsell, *Understanding DUI Scientific Evidence,* 2nd ed., 2009 WL 1342273.
[13] *See, e.g., Cox v. State*, 2014 WL 4801083 (Tex. App. 2014) (holding that results from the Soberlink Testing Devices are not scientifically reliable, and that it was reversible error to admit those test results into evidence at trial).

Case 8:16-cv-01135-CJC-DFM   Document 1   Filed 06/17/16   Page 13 of 67   Page ID #:13

an Alcohol Screening Device or an Evidential Breath Measurement Device.[14] Furthermore, the DOT does not even grade fuel cells, even though Soberlink claims the Testing Devices feature a "DOT grade fuel cell."[15]

51.    Since DOT certification is integral to the validation and subsequent use of PBTs and EBTs by law enforcement professionals, the Testing Devices cannot be considered law enforcement grade, evidentiary grade, or professional grade.

52.    Soberlink failed, and continues to fail, to inform consumers, including Plaintiffs and the Class members, that its Testing Devices are (a) not certified or approved by the DOT, (b) inadmissible in court as evidence of intoxication, and deemed unreliable by courts, and (c) not law enforcement grade, evidentiary grade, or professional grade.

### The Failure of the Testing Devices

53.    In addition to Soberlink's false claims of certification, Soberlink's Testing Devices fail to reliably perform their intended purpose. The Testing

---

[14] *See*, Conforming Products List of Alcohol Screening Devices, 77 Fed. Reg. 35744-47 (June 14, 2012); Conforming Products List of Evidential Breath Measurement Devices, 77 Fed. Reg. 35747-51 (June 14, 2012).
[15] *See*, Exhibit B.

13

Devices are intended to allow users to "easily establish sobriety at any time, in a dignified and discreet way."[16]

54.     Soberlink represented that its Testing Devices will upload data to the internet, and that the Testing Devices have the capability to store and upload tests at a later time if there is a lapse in internet connectivity.

55.     Despite these representations, the Testing Devices do not function as Soberlink describes, as they constantly display error messages, fail to record and transmit data to the internet, and return false positive test results.

56.     The Testing Devices fail to reliably perform their intended purpose because users frequently and repeatedly receive error messages on their Testing Device informing them that their test has not been sent and instructing them to try again.  Instead of quickly and conveniently submitting a valid test, users are forced to continue attempting to submit a successful test in order to remain compliant in their monitoring program.  These prompts for repeated re-testing render users of the Testing Devices unable to establish their sobriety.

57.     The Testing Devices fail to reliably perform their intended purpose because they frequently fail to transmit test results to the internet.  Unbeknownst to the users, the Testing Devices erroneously report that users missed a scheduled test.

---

[16] http://www.soberlink.net/faqs/

14

Despite Soberlink's assurances, the Testing Devices do not reliably upload data to the internet.   A missed test may result in serious consequences, including revocation of their probation and jail time.   According to Soberlink, "If a client either has a positive test or a missed test, both should be viewed as a positive test and treated equally."[17]

58.   The Testing Devices fail to reliably perform their intended purpose because they generate false positive test results.   Users who did not consume any alcohol prior to using the Testing Devices received erroneous test results indicating they had consumed alcohol.

59.   Soberlink failed, and continues to fail, to inform consumers, including Plaintiffs and the Class members, that its Testing Devices do not allow users to establish their sobriety at any time because the Testing Devices (a) frequently and repeatedly display error messages, (b) require users to make repeated attempts to submit a successful test, (c) frequently fail to transmit test results to the internet, (d) erroneously report that users missed scheduled tests, and (e) erroneously generate false positive test results.

//

---

[17]   http://www.soberlink.net/wp-content/uploads/2014/03/Suggested-Protocol-for-Using-SOBERLINK-in-Treatment.pdf

15

60.    Consumers, including Plaintiffs and Class members, previously and currently purchased or rented Soberlink's Testing Devices because they believed the Testing Devices were verified and certified alcohol screening devices, and that the Testing Devices allowed users to establish their sobriety at any time. Consumers, including the Plaintiffs and the Class members, believe the Testing Devices have these qualifications and characteristics in reliance and based on Soberlink's misrepresentations and omissions described herein.

61.    Plaintiffs and the Class members relied on Soberlink's foregoing misrepresentations and omissions in deciding to purchase or rent the Testing Devices. Had Plaintiffs and the Class members known the truth about Soberlink's aforementioned misleading representations, they would not have purchased or rented the Testing Devices, as there were and are alternative alcohol testing technologies available to them that they could and would have chosen.

62.    Plaintiffs and the Class members have been injured due to Soberlink's deception in marketing its Testing Devices, and as a result of Soberlink's conduct, Plaintiffs and the Class members have suffered financial damages resulting from the purchase or rental of Soberlink's Testing Devices.

63.    In light of the foregoing, Plaintiffs, on behalf of themselves and on behalf of Classes of similarly situated individuals, bring this lawsuit seeking injunctive relief (in the form of changing their marketing and advertising

16

materials), actual damages, punitive damages, and restitution, as well as costs and reasonable attorneys' fees.

## FACTS RELEVANT TO PLAINTIFFS

64.     In connection with a child custody case, Turner purchased, and began using, an SL2 model of Soberlink's Testing Devices in September, 2015.

65.     Scioli's daughter, Christina Scioli, entered a court ordered monitoring program in or about August, 2015.  Scioli made the decision to utilize the SL2 model of Soberlink's Testing Devices in connection with his daughter's court ordered monitoring program, and made all payments in connection with the rental of his daughter's Testing Device.

66.     Plaintiffs had a choice of alcohol testing devices to use in conjunction with their respective court cases and monitoring programs.

67.     After reviewing Soberlink's marketing materials and website, which included the representations and omissions described above, Plaintiffs chose to rent Soberlink's Testing Devices for use in the aforementioned court cases and monitoring programs.  Plaintiffs relied on Soberlink's foregoing representations and omissions in choosing Soberlink's Testing Device over alternative, available alcohol testing technologies.

//

//

17

68.     Throughout the course of the monitoring programs, Plaintiffs' Testing Devices repeatedly displayed error codes, failed to upload test results, erroneously reported missed tests, and returned false positive test results.

69.     As a result of Soberlink's misrepresentations and omissions, as well as the Testing Devices' functionality issues, Plaintiffs and other Class members have incurred financial damages resulting from the purchase or rental of Soberlink's Testing Devices.

## CLASS ALLEGATIONS

70.     **Class Definition**: Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and a nationwide Class of similarly situated individuals, defined as follows:

> All persons who purchased or rented a Soberlink portable alcohol monitoring device in the United States.

Excluded from the Class are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

71.     **California Subclass Definition.** In the alternative to the Nationwide Class definition articulated above, Plaintiff Turner, individually, seeks to represent a California Subclass of similarly situated individuals, defined as follows:

> All persons who purchased or rented a Soberlink portable alcohol monitoring device in the state of California or any other state with substantially similar statutory or common law theories of relief.

Excluded from the California Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the California Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

72. **Michigan Subclass Definition.** In the alternative to the Nationwide Class definition articulated above, Plaintiff Scioli, individually, seeks to represent a Michigan Subclass of similarly situated individuals, defined as follows:

> All persons who purchased or rented a Soberlink portable alcohol monitoring device in the state of Michigan or any other state with substantially similar statutory or common law theories of relief.

Excluded from the Michigan Subclass are: (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Michigan Subclass; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

73. In addition to the Class definitions articulated above, Plaintiffs may also seek to certify Classes with respect to particular issues of fact or law that are

common to their claims, pursuant to Fed. R. Civ. P. 23(c)(4).  For example, to the extent that, *inter alia*, reliance, materiality, intent, or foreseeability are essential elements to otherwise distinct claims, Plaintiffs may seek Class certification as to that particular issue or issues.

74.    **Numerosity**: Upon information and belief, the Class comprises thousands of consumers throughout the United States, and is so numerous that joinder of all members the Class is impracticable.  While the exact number of Class members is presently unknown and can only be ascertained through discovery, Plaintiffs believe there are thousands of Class members Nationwide based upon the fact that Defendants sell the Testing Devices in all 50 states.  Upon information and belief, each Subclass is comprised of hundreds of consumers.

75.    In September, 2013, Soberlink and BI, Inc. signed a nationwide distribution agreement. [18]    As of August 22, 2014, the Testing Devices in use transmitted test results for over 25,000 tests each day.[19]    Soberlink recommends using the Testing Devices "2-3 times a day."[20]   Even if each user of the Testing

---

[18] http://www.soberlink.net/bi-incorporated-soberlink-enter-distribution-agreement-for-sl2-alcohol-monitoring-system/
[19] http://blog.bi.com/industry-news/soberlink-adds-range-test-window
[20] http://www.soberlink.net/wp-content/uploads/2014/03/Suggested-Protocol-for-Using-SOBERLINK-in-Treatment.pdf

20

Devices submitted three (3) tests per day, the Class would comprise over 8,000 individuals.

76.   The number of Testing Device users continues to grow, as Soberlink boasts that its SL2 model Testing Device is "the fastest growing electronic monitoring device on the market."[21]

77.   **Ascertainability**: Class members can be easily identified through Defendants' records or by other means.  The identity of the users of the Testing Devices is stored in Soberlink's Monitoring Web Portal.

78.   **Commonality and Predominance**: There is a well-defined community of interest in the question of law and fact presented in this case. Several questions of law and fact common to the claims of Plaintiffs and members of the Class predominate over any individual issues, including:

> a.   Whether the Testing Devices are court verified and admissible in court as evidence of intoxication;
>
> b.   Whether the Testing Devices are certified or approved by the DOT;
>
> c.   Whether the Testing Devices are law enforcement grade, evidentiary grade, or professional grade;
>
> d.   Whether the users of the Testing Devices can establish sobriety at any time;

---

[21] http://www.soberlink.net/faqs/

21

e.    Whether the Testing Devices frequently fail to transmit test results, and erroneously report that users missed tests;

f.    Whether the Testing Devices require consumers to repeatedly take re-tests due to frequent error messages;

g.    Whether the Testing Devices are defective;

h.    Whether Defendants' conduct violated the California Consumers Legal Remedies Act ("CLRA");

i.    Whether Defendants' conduct violated the California Unfair Competition Law ("UCL");

j.    Whether Defendants' conduct violated the California False Advertising Law ("FAL");

k.    Whether Defendants' conduct violated the consumer protection laws of each of the 50 states and the District of Columbia, including the Michigan Consumer Protection Act ("Michigan Act"), MCL 445.901, *et seq.*;

l.    Whether Defendants' conduct was fraudulent or misleading;

m.    Whether Defendants' conduct constitutes fraud;

n.    Whether Defendants' conduct constitutes fraudulent misrepresentation; and

o.    Whether Defendants unjustly retained a benefit to the detriment of Plaintiffs and Class members.

79.    **Typicality**: Plaintiffs' claims are typical of the claims of the proposed Classes.  All claims are based on the same legal and factual issues. Soberlink's misrepresentations and omissions were common and uniform to all Class members. All Testing Devices had, and have, the same design defects and malfunctions, and

22

Soberlink's conduct regarding these defects and malfunctions was common and uniform to all Class members.

80.     **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the proposed Classes.  Plaintiffs do not have any interests antagonistic to those of the proposed Classes.  Plaintiffs have retained competent counsel experienced in the prosecution of this type of litigation. The questions of law and fact common to the proposed Class members predominate over any questions affecting only individual Class members.

81.     **Superiority**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually.   The trial and the litigation of Plaintiffs' claims are manageable.

**<u>COUNT I</u>**
**Violation of the California Consumers Legal Remedies Act**
**(Cal.Civ.Code §§ 1750, *et seq*.)**
**(On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, on Behalf of Plaintiff Turner and the California Subclass)**

82.     Plaintiffs repeat and re-allege the allegations in Paragraphs 1-81 with the same force and effect as though fully set forth herein.

//

//

23

83.     To the extent that the Nationwide Class cannot assert claims under the CLRA, Plaintiff Turner brings Count I, individually, and on behalf of the California Subclass, against Defendants.

84.     Cal.Civ.Code § 1770 makes unlawful "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods."

85.     The Consumers Legal Remedies Act "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal.Civ.Code § 1760.

86.     The Testing Devices are "goods" as defined by Cal.Civ.Code § 1761(a).

87.     Each Defendant is a "person" as defined by Cal.Civ.Code § 1761(c).

88.     Plaintiffs and members of the Class are "consumers" as defined by Cal.Civ.Code § 1761(d).

89.     By designing, marketing, and selling Testing Devices from the State of California, Defendants affected commerce and trade within the State of California.

90.     Most of the misrepresentations and omissions alleged herein were contained on Soberlink's website, which is maintained in California.  Defendants

24

created, developed, and approved of the marketing materials containing the misrepresentations and omissions alleged herein at Soberlink's headquarters in California.

91.    When Plaintiffs and the members of the Class purchased or rented the Testing Devices, those payments were processed and the money was sent to Soberlink's headquarters in California.

92.    Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of Cal.Civ.Code § 1770(a)(2) when, in marketing and selling Testing Devices, Defendants misrepresent the sponsorship, approval, and certification of goods by representing that the Testing Devices are DOT certified and approved by the courts as admissible evidence of intoxication.

93.    Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of Cal.Civ.Code § 1770(a)(5) when, in marketing and selling Testing Devices, Defendants misrepresent the sponsorship, approval, and characteristics of goods by representing that the Testing Devices allow users to establish their sobriety at any time, are DOT certified, and are approved by the courts as admissible evidence of intoxication.

94.    Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of Cal.Civ.Code § 1770(a)(7) when, in marketing and selling Testing Devices, Defendants misrepresent the standard, quality, and grade of goods

by representing that the Testing Devices feature DOT grade fuel cells, and are law enforcement grade, evidentiary grade, professional grade, and approved by the courts as admissible evidence of intoxication.

95.     Defendants intended, and still intend, that Plaintiffs and the members of the Class rely upon Defendants' misrepresentations and omissions concerning the certifications, approvals, quality, characteristics, and reliability of the Testing Devices.

96.     Defendants' misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of deception.

97.     Defendants' actions, as set forth herein, are acts related to the advertisement and sale of consumer merchandise, and constitute unfair and deceptive trade practices in violation of Cal.Civ.Code § 1770.

98.     Defendants' actions are unfair business practices because they offend an established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

99.     Acting as reasonable consumers, had Plaintiffs and the Class known that the Testing Devices were not certified by the DOT, do not feature DOT grade fuel cells, are not approved by the courts as admissible evidence of intoxication, are not professional grade, evidentiary grade, or law enforcement grade, and do not

26

allow users to establish their sobriety at any time, they would not have purchased or rented the Testing Devices.

100.   Plaintiffs and Class members could not have reasonably avoided the injuries suffered by purchasing or renting the Testing Devices because it was reasonable for Plaintiffs and Class members to rely on Defendants' misrepresentations and omissions.

101.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the Testing Devices ("Restitution Damages"), plus additional incidental and consequential damages ("Actual Damages") resulting from the use of the Testing Devices.

102.   The injury suffered by consumers as a result of Defendants' unfair and unlawful conduct is substantial because consumers unknowingly paid to purchase or rent the Testing Devices that (1) Defendants misrepresented as certified by the DOT and featuring DOT grade fuel cells, being approved by the courts as admissible evidence of intoxication, and being professional grade, evidentiary grade, or law enforcement grade; (2) were defective, (3) could not accurately record information, and (4) could not be used by Plaintiff and Class members to prove their sobriety.

27

103.   The substantial injury to consumers outweighs any benefit to consumers or competition that may result from Defendants' misrepresentations regarding their Testing Devices.

104.   Due to Defendants' misrepresentations and omissions described above, Plaintiffs, individually, and on behalf of the Class, seek injunctive relief, pursuant to Cal.Civ.Code §1780(a)(2). Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, to reflect the Testing Device's lack of DOT certification, and lack of court approval as admissible evidence of intoxication; (3) requiring Defendants to remove the false and misleading descriptions of the Testing Devices from their marketing and advertising materials, including their website, such as that the Testing Devices are professional grade, evidentiary grade, or law enforcement grade, and utilize DOT grade fuel cells; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

105.   Concurrently with the filing of this Complaint, Plaintiffs sent notice to Defendants of their violations of Cal.Civ.Code § 1770 in accordance with Cal.Civ.Code § 1782.  If Defendants fail to make the demanded corrections within

thirty (30) days of receipt of Plaintiffs' notice, Plaintiffs will amend this Count in the Complaint and seek Restitution Damages, Actual Damages, and punitive damages in this Count.

106.   Plaintiffs also seek the recovery of court costs and attorneys' fees pursuant to Cal.Civ.Code § 1780(e).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

E.   Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

F.   Granting all such further and other relief as the Court deems just and appropriate.

//

//

//

## COUNT II
### Violation of the California Unfair Competition Law
### (Cal.Bus. & Prof.Code §§ 17200, *et seq.*)
### (On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, on Behalf of Plaintiff Turner and the California Subclass)

107.   Plaintiffs repeat and re-allege the allegations in Paragraphs 1-81 with same force and effect as though fully set forth herein.

108.   To the extent that the Nationwide Class cannot assert claims under the UCL, Plaintiff Turner brings Count II, individually, and on behalf of the California Subclass, against Defendants.

109.   Cal.Bus. & Prof.Code § 17200 makes unlawful fraudulent business acts or practices, and unfair, deceptive, untrue, or misleading advertising.

110.   Each Defendant is a "person" as defined by Cal.Bus. & Prof.Code § 17201.

111.   By designing, marketing, and selling Testing Devices from the State of California, Defendants affected commerce and trade within the State of California.

112.   Most of the misrepresentations and omissions alleged herein were contained on Soberlink's website, which is maintained in California.  Defendants created, developed, and approved of the marketing materials containing the misrepresentations and omissions alleged herein at Soberlink's headquarters in California.

30

113.   When Plaintiffs and the members of the Class purchased or rented the Testing Devices, those payments were processed and the money was sent to Soberlink's headquarters in California.

114.   Defendants violated, and continue to violate, Cal.Bus. & Prof.Code §§ 17200, *et seq.* when, in marketing and selling Testing Devices, Defendants made and make false or misleading statements, such as that the Testing Devices were and are DOT certified, approved by the courts as admissible evidence of intoxication, professional grade, evidentiary grade, law enforcement grade, allow users to establish their sobriety at any time, and feature DOT grade fuel cells. Defendants' conduct also undermines California public policy against fraud.

115.   Defendants intended, and still intend, that Plaintiffs and the members of the Class rely upon Defendants' misrepresentations and omissions concerning the certifications, approvals, quality, characteristics, and reliability of the Testing Devices.

116.   Defendants' misrepresentations and omissions possessed the tendency or capacity to mislead and create the likelihood of deception.

117.   Defendants' actions, as set forth herein, were acts related to the advertisement and sale of consumer merchandise, and constitute unfair and deceptive trade practices in violation of Cal.Bus. & Prof.Code § 17200.

//

31

118.   Defendants' actions, as set forth herein, are unfair business practices because they offend California's established public policy against fraud, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

119.   Acting as reasonable consumers, had Plaintiffs and the Class known that the Testing Devices were not certified by the DOT, do not feature DOT grade fuel cells, are not approved by the courts as admissible evidence of intoxication, are not professional grade, evidentiary grade, or law enforcement grade, and do not allow users to establish their sobriety at any time, they would not have purchased or rented the Testing Devices.

120.   Plaintiffs and Class members could not have reasonably avoided the injuries suffered by purchasing or renting the Testing Devices because it was reasonable for Plaintiffs and Class members to rely on Defendants' misrepresentations and omissions.

121.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the Testing Devices (*i.e.*, Restitution Damages).  Plaintiffs, individually, and on behalf of the Class, seek Restitution Damages.

122. The injury suffered by consumers as a result of Defendants' unfair and unlawful conduct is substantial because consumers unknowingly paid to purchase or rent the Testing Devices that (1) Defendants misrepresented as certified by the DOT and featuring DOT grade fuel cells, being approved by the courts as admissible evidence of intoxication, and being professional grade, evidentiary grade, or law enforcement grade; (2) were defective, (3) could not accurately record information, and (4) could not be used by Plaintiffs and Class members to prove their sobriety.

123. The substantial injury to consumers outweighs any benefit to consumers or competition that may result from Defendants' misrepresentations regarding their Testing Devices.

124. Due to Defendants' misrepresentations and omissions described above, Plaintiffs, individually, and on behalf of the Class, also seek injunctive relief, pursuant to Cal. Bus. & Prof. Code § 17203. Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, to reflect the Testing Device's lack of DOT certification, and lack of court approval as admissible evidence of intoxication; (3) requiring Defendants to remove the false and misleading descriptions of the Testing Devices from their marketing and advertising materials, including their website, such as

that the Testing Devices are professional grade, evidentiary grade, law enforcement grade, and utilize DOT grade fuel cells; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

125. In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs seek the recovery of attorneys' fees pursuant to the California Code of Civil Procedure § 1021.5, which is available to a prevailing plaintiff who wins relief for the general public.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B. Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D. Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the Testing Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.     Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

F.     Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G.     Granting all such further and other relief as the Court deems just and appropriate.

<u>**COUNT III**</u>
**Violation of the California False Advertising Law**
**(Cal.Bus. & Prof.Code §§ 17500, *et seq*.)**
**(On Behalf of Plaintiffs and the Nationwide Class, or in the Alternative, on Behalf of Plaintiff Turner and the California Subclass)**

126.   Plaintiffs repeat and re-allege the allegations in Paragraphs 1-81 with same force and effect as though fully set forth herein.

127.   To the extent that the Nationwide Class cannot assert claims under the FAL, Plaintiff Turner brings Count III, individually, and on behalf of the California Subclass, against Defendants.

128.   Cal.Bus. & Prof.Code § 17500 makes unlawful false or misleading statements made in the advertisement of property for sale.

129.   Each Defendant is a "person" as defined by Cal.Bus. & Prof.Code § 17506.

130.   By designing, marketing, and selling Testing Devices from the State of California, Defendants affected commerce and trade within the State of California.

35

131.   Most of the misrepresentations and omissions alleged herein were contained on Soberlink's website, which is maintained in California.  Defendants created, developed, and approved of the marketing materials containing the misrepresentations and omissions alleged herein at Soberlink's headquarters in California.

132.   When Plaintiffs and the members of the Class purchased or rented the Testing Devices, those payments were processed and the money was sent to Soberlink's headquarters in California.

133.   Defendants violated, and continue to violate, Cal.Bus. & Prof.Code § 17500 when, in marketing and selling Testing Devices, Defendants made and make false or misleading statements, such as that the Testing Devices were and are DOT certified, approved by the courts as admissible evidence of intoxication, professional grade, evidentiary grade, law enforcement grade, allow users to establish their sobriety at any time, and feature DOT grade fuel cells.

134.   Defendants intended, and still intend, that Plaintiffs and the members of the Class rely upon Defendants' misrepresentations and omissions concerning the certifications, approvals, quality, characteristics, and reliability of their Testing Devices.

135.   Defendants' misrepresentations and omissions possessed the tendency or capacity to mislead and create the likelihood of deception.

36

//

//

136.   Defendants' actions, as set forth herein, were acts related to the advertisement and sale of consumer merchandise, and constitute unfair and deceptive trade practices in violation of Cal.Bus. & Prof.Code § 17500.

137.   Defendants' actions, as set forth herein, are unfair business practices because they offend an established public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers.

138.   Acting as reasonable consumers, had Plaintiffs and the Class known that the Testing Devices were not certified by the DOT, do not feature DOT grade fuel cells, are not approved by the courts as admissible evidence of intoxication, are not professional grade, evidentiary grade, or law enforcement grade, and do not allow users to establish their sobriety at any time, they would not have purchased or rented the Testing Devices.

139.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the Testing Devices (*i.e.*, Restitution Damages).  Plaintiffs, individually, and on behalf of the Class, seek Restitution Damages.

37

140.  Due to Defendants' misrepresentations and omissions described above, Plaintiffs, individually, and on behalf of the Class, also seek injunctive relief, pursuant to Cal.Bus. & Prof.Code § 17535.  Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, to reflect the Testing Device's lack of DOT certification, and lack of court approval as admissible evidence of intoxication; (3) requiring Defendants to remove the false and misleading descriptions of the Testing Devices from their marketing and advertising materials, including their website, such as that the Testing Devices are professional grade, evidentiary grade, law enforcement grade, and utilize  DOT grade fuel cells; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

141.  In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiffs seek the recovery of attorneys' fees pursuant to the California Code of Civil Procedure § 1021.5, which is available to a prevailing plaintiff who wins relief for the general public.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.    Designating Plaintiffs as representatives of the Class and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.    Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the Testing Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.    Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

F.    Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

G.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT IV
### Violation of the Michigan Consumer Protection Act, MCL 445.901, *et seq.*
### (On Behalf of Plaintiff Scioli and the Michigan Subclass)
### (In the Alternative to Counts I, II, and III)

142.   Plaintiff Scioli repeats and re-alleges the allegations of Paragraphs 1-81 with the same force and effect as though fully set forth herein.

39

143.   To the extent that the Nationwide Class cannot assert claims under the CLRA, UCL, and FAL, Plaintiff Scioli brings Count IV, individually, and on behalf of the Michigan Subclass, against Defendants.

144.   At all relevant times, there was in full force and effect the Michigan Act, MCL 445.901, *et seq*.

145.   At all relevant times, Defendants were engaged in the business of manufacturing, distributing, advertising, and selling the Testing Devices.

146.   The Michigan Act provides, "Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce are unlawful." MCL 445.903(1).  Unlawful practices under the Michigan Act include, but are not limited to: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, (2) representing that goods or services are of a particular standard, quality, or grade, or (3) that the goods are of a particular style or model, if they are of another, and failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer. *See*, MCL 445.903(1).

147.   Defendants are each "persons" pursuant to MCL 445.902(d).

148.   By advertising and selling Testing Devices in the State of Michigan, Defendants affect commerce and trade within the State of Michigan. MCL 445.902(g).

149.   Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of MCL 445.903(1)(c) when, in marketing and selling their Testing Devices, Defendants misrepresent the sponsorship, approval, status, affiliation, and connection of goods by representing that the Testing Devices are DOT certified and approved by the courts as admissible evidence of intoxication.

150.   Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of MCL 445.903(1)(e) when, in marketing and selling their Testing Devices, Defendants misrepresent the standard, quality, and grade of goods by representing that the Testing Devices feature DOT grade fuel cells, and are law enforcement grade, evidentiary grade, professional grade, and approved by the courts as admissible evidence of intoxication.

151.   Defendants engaged, and still engage, in unfair or deceptive acts or practices in violation of MCL 445.903(1)(s), (bb), and (cc) when, in marketing and selling their Testing Devices, Defendants made misrepresentations and omissions of material facts that misled or deceived Plaintiff Scioli and other members of the Michigan Subclass regarding the certifications, approvals, quality, characteristics, and reliability of the Testing Devices.

152.   Defendants intended, and still intend, that Plaintiff Scioli and the members of the Michigan Subclass rely upon Defendants' misrepresentations and omissions concerning the certifications, approvals, quality, characteristics, and reliability of the Testing Devices.

153.   Defendants' misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of deception.

154.   The facts that Defendants misrepresented, concealed from, or failed to disclose to Plaintiff Scioli and the members of the Michigan Subclass are material because a reasonable consumer would consider them important factors in deciding whether to purchase or lease the Testing Devices.

155.   Defendants' actions were and are unfair business practices because they are contrary to public policy.

156.   Acting as reasonable consumers, had Plaintiff Scioli and the Michigan Subclass known that the Testing Devices were not certified by the DOT, do not feature DOT grade fuel cells, are not approved by the courts as admissible evidence of intoxication, are not professional grade, evidentiary grade, or law enforcement grade, and do not allow users to establish their sobriety at any time, they would not have purchased or rented the Testing Devices.

157.   Plaintiff Scioli and the Michigan Subclass members could not have reasonably avoided the injuries suffered by purchasing or renting the Testing

Devices because it was reasonable for Plaintiff Scioli and the Michigan Subclass members to rely on Defendants' misrepresentations and omissions.

158. As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiff Scioli and the members of the Michigan Subclass have suffered damages in the form of the money they paid to purchase or rent the Testing Devices (*i.e.*, Restitution Damages), plus additional incidental and consequential damages (*i.e.*, Actual Damages) resulting from the use of the Testing Devices. Plaintiff Scioli, individually, and on behalf of the Michigan Subclass, seeks Restitution Damages, Actual Damages, and punitive damages.

159. The injury suffered by consumers as a result of Defendants' unfair and unlawful conduct is substantial because consumers unknowingly paid to purchase or rent the Testing Devices that (1) Defendants misrepresented as certified by the DOT and featuring DOT grade fuel cells, being approved by the courts as admissible evidence of intoxication, and being professional grade, evidentiary grade, or law enforcement grade; (2) were defective, (3) could not accurately record information, and (4) could not be used by Plaintiff Scioli and the Michigan Subclass members to prove their sobriety.

160. The substantial injury to consumers outweighs any benefit to consumers or competition that may result from Defendants' misrepresentations regarding their Testing Devices.

43

161.   Due to Defendants' misrepresentations and omissions described above, Plaintiff Scioli, individually, and on behalf of the Michigan Subclass, also seeks injunctive relief, pursuant to MCL § 445.911. Plaintiff Scioli seeks an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, to reflect the Testing Device's lack of DOT certification, and lack of court approval as admissible evidence of intoxication; (3) requiring Defendants to remove the false and misleading descriptions of the Testing Devices from their marketing and advertising materials, including their website, such as that the Testing Devices are professional grade, evidentiary grade, law enforcement grade, and utilize  DOT grade fuel cells; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

162.   Plaintiff Scioli also seeks the recovery of court costs and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Scioli, individually, and on behalf of the Michigan Subclass, prays for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Michigan Subclass defined herein;

B.   Designating Plaintiff Scioli as representative of the Michigan Subclass and his undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiff Scioli and the Michigan Subclass and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiff Scioli and members of the Michigan Subclass paid to rent the Testing Devices, and awarding the disgorged money as Restitution Damages to Plaintiff Scioli and members of the Michigan Subclass, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Awarding Plaintiff Scioli and members of the Michigan Subclass their Actual Damages, including any additional incidental and consequential damages resulting from their use of the Testing Devices, and interest thereon, as allowed or required by law;

F.   Assessing punitive damages against Defendants and awarding them to Plaintiff Scioli and members of the Michigan Subclass;

G.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

H.   Awarding Plaintiff Scioli reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

I.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT V
**Violation of the Consumer Fraud and Deceptive Trade Practices Acts**
**of the Various States and District of Columbia**
**(On Behalf of Plaintiffs and the Nationwide Class)**

45

163.   Plaintiffs repeat and re-allege the allegations of Paragraphs 1-81 with the same force and effect as though fully set forth herein.

164.   Plaintiffs bring this Count individually, and on behalf of all similarly situated residents of each of the 50 states and the District of Columbia (*i.e.*, the Class) for violations of the respective statutory consumer protection laws, as follows:

a.   the Alabama Deceptive Trade Practices Act, Ala.Code 1975, § 8–19–1, *et seq.*;

b.   the Alaska Unfair Trade Practices and Consumer Protection Act, AS § 45.50.471, *et seq.*;

c.   the Arizona Consumer Fraud Act, A.R.S §§ 44-1521, *et seq.*;

d.   the Arkansas Deceptive Trade Practices Act, Ark.Code §§ 4-88-101, *et seq.*;

e.   the California Unfair Competition Law, Bus. & Prof. Code §§17200, *et seq.* and 17500 *et seq.*;

f.   the California Consumers Legal Remedies Act, Civil Code §1750, *et seq.*;

g.   the Colorado Consumer Protection Act, C.R.S.A. §6-1-101, *et seq.*;

h.   the Connecticut Unfair Trade Practices Act, C.G.S.A. § 42-110, *et seq.*;

i.   the Delaware Consumer Fraud Act, 6 Del. C. § 2513, *et seq.*;

j.   the D.C. Consumer Protection Procedures Act, DC Code § 28-3901, *et seq.*;

k.   the Florida Deceptive and Unfair Trade Practices Act, FSA § 501.201, *et seq.*;

l.      the Georgia Fair Business Practices Act, OCGA § 10-1-390, *et seq.*;

m.      the Hawaii Unfair Competition Law, H.R.S. § 480-1, *et seq.*;

n.      the Idaho Consumer Protection Act, I.C. § 48-601, *et seq.*;

o.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1 *et seq.*;

p.      the Indiana Deceptive Consumer Sales Act, IN ST § 24-5-0.5-2, *et seq.*;

q.      The Iowa Private Right of Action for Consumer Frauds Act, Iowa Code Ann. § 714H.1, *et seq.*;

r.      the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.*;

s.      the Kentucky Consumer Protection Act, KRS 367.110, *et seq.*;

t.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.*;

u.      the Maine Unfair Trade Practices Act, 5 M.R.S.A. § 205-A, *et seq.*;

v.      the Maryland Consumer Protection Act, MD Code, Commercial Law, § 13-301, *et seq.*;

w.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, M.G.L.A. 93A, *et seq.*;

x.      the Michigan Consumer Protection Act, MCL 445.901, *et seq.*;

y.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.*;

z.      the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

aa.     the Missouri Merchandising Practices Act, V.A.M.S. § 407, *et seq.*;

bb.     the Montana Unfair Trade Practices and Consumer Protection Act of 1973, Mont. Code Ann. § 30-14-101, *et seq*.;

cc.     the Nebraska Consumer Protection Act, Neb.Rev.St. §§ 59-1601, *et seq*.;

dd.     the Nevada Deceptive Trade Practices Act, N.R.S. 41.600, *et seq*.;

ee.     the New Hampshire Regulation of Business Practices for Consumer Protection, N.H.Rev.Stat. § 358-A:1, *et seq*.;

ff.     the New Jersey Consumer Fraud Act, N.J.S.A. 56:8, *et seq*.;

gg.     the New Mexico Unfair Practices Act, N.M.S.A. §§ 57-12-1, *et seq*.;

hh.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. GBL (McKinney) § 349, *et seq*.;

ii.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

jj.     the North Dakota Consumer Fraud Act, N.D. Cent.Code Chapter 51-15, *et seq*.;

kk.     the Ohio Consumer Sales Practices Act, R.C. 1345.01, *et seq*.;

ll.     the Oklahoma Consumer Protection Act, 15 O.S.2001, §§ 751, *et seq*.;

mm.     the Oregon Unlawful Trade Practices Act, ORS 646.605, *et seq*.;

nn.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

oo.     the Rhode Island Deceptive Trade Practices Act, G.L.1956 § 6-13.1-5.2(B), *et seq*.;

pp.     the South Carolina Unfair Trade Practices Act, SC Code 1976, §§ 39-5-10, *et seq*.;

48

qq.    the South Dakota Deceptive Trade Practices and Consumer Protection Act, SDCL § 37-24-1, *et seq*.;

rr.    the Tennessee Consumer Protection Act, T.C.A. § 47-18-101, *et seq*.;

ss.    the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq*.;

tt.    the Utah Consumer Sales Practices Act, UT ST § 13-11-1, *et seq*.;

uu.    the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

vv.    the Virginia Consumer Protection Act of 1977, VA ST § 59.1-196, *et seq*.;

ww.    the Washington Consumer Protection Act, RCWA 19.86.010, *et seq*.;

xx.    the West Virginia Consumer Credit And Protection Act, W.Va.Code § 46A-1-101, *et seq*.;

yy.    the Wisconsin Deceptive Trade Practices Act, WIS.STAT. § 100.18, *et seq*.; and

zz.    the Wyoming Consumer Protection Act, WY ST § 40-12-101, *et seq*.

165.   The Testing Devices are consumer goods.

166.   Defendants engaged, and still engage in, unfair or deceptive acts or practices when, in marketing and selling Testing Devices, Defendants misrepresent the sponsorship, approval, and characteristics of goods which they do not have by representing that the Testing Devices are DOT certified, law enforcement grade, evidentiary grade, professional grade, approved by the courts as admissible

49

evidence of intoxication, allow users to establish their sobriety at any time, and feature DOT grade fuel cells.

167.   Defendants intended, and still intend, that Plaintiffs and the members of the Class rely upon Defendants' misrepresentations and omissions concerning the certifications, approvals, quality, characteristics, and reliability of their Testing Devices.

168.   Defendants' misrepresentations and omissions possess the tendency or capacity to mislead and create the likelihood of deception.

169.   The above-described deceptive and unfair acts and practices were used or employed in the conduct of trade or commerce, namely, the marketing, sale, and distribution of the Testing Devices to Plaintiffs and Class members.

170.   The above-described deceptive and unfair acts offend public policy and cause substantial injury to consumers.

171.   Plaintiffs and the Class relied upon Defendants' misrepresentations and omissions described above.

172.   Acting as reasonable consumers, had Plaintiffs and the Class known that the Testing Devices were not certified by the DOT, do not feature DOT grade fuel cells, are not approved by the courts as admissible evidence of intoxication, are not professional grade, evidentiary grade, or law enforcement grade, and do not

50

allow users to establish their sobriety at any time, they would not have purchased or rented the Testing Devices.

173.   Plaintiffs and Class members could not have reasonably avoided the injuries suffered by purchasing or renting the Testing Devices because it was reasonable for Plaintiffs and Class members to rely on Defendants' misrepresentations and omissions.

174.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the Testing Devices (*i.e.*, Restitution Damages) plus additional incidental and consequential damages (*i.e.*, Actual Damages) resulting from the use of the Testing Devices.   Plaintiffs, individually, and on behalf of the Class, seek Restitution Damages, Actual Damages, and punitive damages, along with reasonable attorneys' fees and costs.

175.   The injury suffered by consumers as a result of Defendants' unfair and unlawful conduct is substantial because consumers unknowingly paid to purchase or rent the Testing Devices that (1) Defendants misrepresented as certified by the DOT and featuring DOT grade fuel cells, being approved by the courts as admissible evidence of intoxication, and being professional grade, evidentiary grade, or law enforcement grade; (2) were defective, (3) could not accurately

record information, and (4) could not be used by Plaintiff Scioli and the Michigan Subclass members to prove their sobriety.

176. The substantial injury to consumers outweighs any benefit to consumers or competition that may result from Defendants' misrepresentations regarding their Testing Devices.

177. Due to Defendants' misrepresentations and omissions described above, Plaintiffs, individually, and on behalf of the Class, also seek injunctive relief.  Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, to reflect the Testing Device's lack of DOT certification, and lack of court approval as admissible evidence of intoxication; (3) requiring Defendants to remove the false and misleading descriptions of the Testing Devices from marketing and advertising materials, including their website, such as that the Testing Devices are professional grade, evidentiary grade, law enforcement grade, and utilize  DOT grade fuel cells; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

## **PRAYER FOR RELIEF**

52

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.    Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.    Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.    Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the Testing Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.    Awarding Plaintiffs and the Class their Actual Damages, including any additional incidental and consequential damages resulting from their use of the Testing Devices, and interest thereon, as allowed or required by law;

F.    Assessing punitive damages against Defendants and awarding them to Plaintiffs and the Class;

G.    Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

H.    Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

I.    Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VI
### Fraud

53

**(Based on California and Other States' Common Law)**
**(On Behalf of Plaintiffs, the Nationwide Class, and All Subclasses)**

178.   Plaintiffs repeat and re-allege the allegations of Paragraphs 1-81 with the same force and effect as though fully set forth herein.

179.   To the extent that the Nationwide Class cannot assert fraud claims under California common law, Plaintiff Turner brings Count VI, individually, and on behalf of the California Subclass, and Plaintiff Scioli brings Count VI, individually, and on behalf of the Michigan Subclass, against Defendants.

180.   The elements of a cause of action for fraud are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 990 (2004) (citing *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996)).

181.   Defendants intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning the sponsorship, approval, and characteristics of goods which they do not have by representing that the Testing Devices are DOT certified, law enforcement grade, evidentiary grade, professional grade, approved by the courts as admissible evidence of intoxication, allow users to establish their sobriety at any time, and feature DOT grade fuel cells.

54

182.   Defendants also intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning their ability to accurately record, store, and disseminate the data and reports generated by the Testing Devices.

183.   Defendants knew that the Testing Devices are not DOT certified, law enforcement grade, evidentiary grade, professional grade, approved by the courts as admissible evidence of intoxication, do not allow users to establish their sobriety at any time, and do not feature DOT grade fuel cells, but Defendants concealed these facts from Plaintiffs and the Class.

//

//

184.   Defendants also knew that the Testing Devices did not have the ability to accurately record, store, and disseminate the data and reports generated by the Testing Devices, but Defendants concealed these facts from Plaintiff and the Class.

185.   Defendants affirmatively misrepresented and/or actively concealed material facts with the intent that Plaintiffs and the members of the Class purchase or rent the Testing Devices.

186.   Acting as reasonable consumers, Plaintiffs and the Class were unaware of the falsity of these omitted and misrepresented material facts because they justifiably relied upon Defendants' misrepresentations and omissions.

187.    Due to their justifiable reliance upon Defendants' misrepresentations and omissions, Plaintiffs and the Class purchased or rented the Testing Devices, and would not have done so if they had been aware of the truth.

188.    As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the Testing Devices (*i.e.*, Restitution Damages), plus additional incidental and consequential damages (*i.e.*, Actual Damages) resulting from the use of the Testing Devices. Plaintiffs, individually, and on behalf of the Class, seek Actual Damages, Restitution Damages, and punitive damages, along with reasonable attorneys' fees and costs.

189.    Due to Defendants' misrepresentations and omissions described above, Plaintiffs, individually, and on behalf of the Class, also seek injunctive relief. Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, to reflect the Testing Device's lack of DOT certification, and lack of court approval as admissible evidence of intoxication; (3) requiring Defendants to remove the false and misleading descriptions of the Testing Devices from marketing and advertising materials, including their website, such as that the Testing Devices are professional

grade, evidentiary grade, law enforcement grade, and utilize  DOT grade fuel cells; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the Testing Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Awarding Plaintiffs and the Class their Actual Damages, including any additional incidental and consequential damages resulting from their use of the Testing Devices, and interest thereon, as allowed or required by law;

F.   Assessing punitive damages against Defendants and awarding them to Plaintiffs and the Class;

G.  Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

H.  Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

I.  Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VII
### Fraudulent Misrepresentation
### (Based on California and Other States' Common Law)
### (On Behalf of Plaintiffs, the Nationwide Class, and All Subclasses)

190.  Plaintiffs repeat and re-allege the allegations of Paragraphs 1-81 with the same force and effect as though fully set forth herein.

191.  To the extent that the Nationwide Class cannot assert fraudulent misrepresentation claims under California common law, Plaintiff Turner brings Count VII, individually, and on behalf of the California Subclass, and Plaintiff Scioli brings Count VII, individually, and on behalf of the Michigan Subclass, against Defendants.

192.  It is well established in California and other jurisdictions that a person who has been induced by fraudulent misrepresentations to enter into a contract or to make a conveyance may have the contract or conveyance set aside and secure a restitution of those benefits lost to him by the transaction. *Seeger v. Odell*, 18 Cal.2d 409, 414 (1941).

58

193.   "[T]he elements of a cause of action for fraudulent misrepresentation are (1) misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Vogelsang v. Wolpert*, 227 Cal.App.2d 102, 109 (5th Dist. 1964) (quoting *Zinn v. Ex-Cell-O Corp.*, 148 Cal.App.2d 56, 68 (1st Dist. 1957)).

194.   Defendants intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning the sponsorship, approval, and characteristics of goods which they do not have by representing that the Testing Devices are DOT certified, law enforcement grade, evidentiary grade, professional grade, approved by the courts as admissible evidence of intoxication, allow users to establish their sobriety at any time, and feature DOT grade fuel cells.

195.   Defendants also intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning their ability to accurately record, store, and disseminate the data and reports generated by the Testing Devices.

196.   Defendants knew that the Testing Devices are not DOT certified, law enforcement grade, evidentiary grade, professional grade, approved by the courts as admissible evidence of intoxication, do not allow users to establish their sobriety

at any time, and do not feature DOT grade fuel cells, but Defendants concealed these facts from Plaintiff and the Class.

197.   Defendants also knew that the Testing Devices did not have the ability to accurately record, store, and disseminate the data and reports generated by the Testing Devices, but Defendants concealed these facts from Plaintiff and the Class.

198.   Defendants affirmatively misrepresented and/or actively concealed material facts with the intent that Plaintiffs and the members of the Class purchase or rent the Testing Devices.

199.   Acting as reasonable consumers, Plaintiffs and the Class were unaware of the falsity of these omitted and misrepresented material facts because they justifiably relied upon Defendants' misrepresentations and omissions.

//

//

200.   Due to their justifiable reliance upon Defendants' misrepresentations and omissions, Plaintiffs and the Class purchased or rented the Testing Devices, and would not have done so if they had been aware of the truth.

201.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the Testing Devices (*i.e.*, Restitution Damages), plus additional incidental and

consequential damages (*i.e.*, Actual Damages) resulting from the use of the Testing Devices.  Plaintiffs, individually, and on behalf of the Class, seek Actual Damages, Restitution Damages, and punitive damages, along with reasonable attorneys' fees and costs.

202.   Due to Defendants' misrepresentations and omissions described above, Plaintiffs, individually, and on behalf of the Class, also seek injunctive relief.  Plaintiffs seek an order (1) requiring Defendants to cease the deceptive and unfair practices described herein; (2) requiring Defendants to change their marketing and advertising materials, including their website, to reflect the Testing Device's lack of DOT certification, and lack of court approval as admissible evidence of intoxication; (3) requiring Defendants to remove the false and misleading descriptions of the Testing Devices from marketing and advertising materials, including their website, such as that the Testing Devices are professional grade, evidentiary grade, law enforcement grade, and utilize  DOT grade fuel cells; and (4) requiring Defendants to disclose that their product frequently and repeatedly displays error messages, frequently fails to transmit test results to the internet, and erroneously reports that users missed scheduled tests.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

A.   Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;

B.   Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;

C.   Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;

D.   Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the Testing Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;

E.   Awarding Plaintiffs and the Class their Actual Damages, including any additional incidental and consequential damages resulting from their use of the Testing Devices, and interest thereon, as allowed or required by law;

F.   Assessing punitive damages against Defendants and awarding them to Plaintiffs and the Class;

//

G.   Enjoining Defendants' conduct as requested herein, and ordering them to cease any and all deceptive and unfair trade practices;

H.   Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and

I.   Granting all such further and other relief as the Court deems just and appropriate.

## COUNT VIII
### Unjust Enrichment/Restitution
### (Based on California and Other States' Common Law)
### (On Behalf of Plaintiffs, the Nationwide Class, and All Subclasses)

62

203.   Plaintiffs repeat and re-allege the allegations of Paragraphs 1-81 with the same force and effect as though fully set forth herein.

204.   To the extent that the Nationwide Class cannot assert unjust enrichment/restitution claims under California common law, Plaintiff Turner brings Count VIII, individually, and on behalf of the California Subclass, and Plaintiff Scioli brings Count VIII, individually, and on behalf of the Michigan Subclass, against Defendants.

205.   California law allows parties to pursue a cause of action under a theory of unjust enrichment.  *In re Processed Egg Products Antitrust Litig.*, 851 F. Supp. 2d 867, 913 (E.D. Pa. 2012) (citing *Ghirardo v. Antonioli,* 14 Cal.4th 39, 57 Cal.Rptr.2d 687, 924 P.2d 996, 1002–03 (1996)).   At California common law, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.'" *Peterson v. Cellco P'ship*, 164 Cal.App.4th 1583, 1593 (4th Dist. 2008) (quoting *Lectrodryer v. SeoulBank* (2000) 77 Cal.App.4th 723, 724 (2d Dist. 2000)).

206.   Defendants intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning the sponsorship, approval, and characteristics of goods which they do not have by representing that the Testing Devices are DOT certified, law enforcement grade, evidentiary grade,

professional grade, approved by the courts as admissible evidence of intoxication, allow users to establish their sobriety at any time, and feature DOT grade fuel cells.

207.   Defendants also intentionally misrepresented and concealed, and continue to misrepresent and conceal, material facts concerning their ability to accurately record, store, and disseminate the data and reports generated by the Testing Devices.

208.   Defendants knew that the Testing Devices are not DOT certified, law enforcement grade, evidentiary grade, professional grade, approved by the courts as admissible evidence of intoxication, do not allow users to establish their sobriety at any time, and do not feature DOT grade fuel cells, but Defendants concealed these facts from Plaintiff and the Class.

209.   Defendants also knew that the Testing Devices did not have the ability to accurately record, store, and disseminate the data and reports generated by the Testing Devices, but Defendants concealed these facts from Plaintiff and the Class.

210.   Defendants affirmatively misrepresented and/or actively concealed material facts with the intent that Plaintiffs and the members of the Class purchase or rent the Testing Devices.

211.   Acting as reasonable consumers, Plaintiffs and the Class were unaware of the falsity of these omitted and misrepresented material facts because they justifiably relied upon Defendants' misrepresentations and omissions.

64

212.   Due to their justifiable reliance upon Defendants' misrepresentations and omissions, Plaintiffs and the Class purchased or rented the Testing Devices, and would not have done so if they had been aware of the truth.

213.   Based upon the aforementioned deception in marketing and selling the Testing Devices, Defendants have unjustly received and retained money belonging to Plaintiffs and the Class as a result of their wrongful conduct: their false and misleading marketing and advertising campaign for the Testing Devices.  Each individual sale and rental nets Defendants profit at the expense of the consumer.

214.  Defendants' retention of the benefit violates the fundamental principles of justice, equity, and good conscience.

215.   Under the principles of equity, Defendants should not be allowed to keep the money belonging to Plaintiffs and the members of the Class because Defendants have unjustly received it as a result of their unlawful actions described herein.

216.   As a direct and proximate result of these unfair, deceptive and unconscionable commercial practices, Plaintiffs and the members of the Class have suffered damages in the form of the money they paid to purchase or rent the Testing Devices (*i.e.*, Restitution Damages).  Plaintiffs, individually, and on behalf of the Class seek Restitution Damages, along with reasonable attorneys' fees and costs.

65

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of the Class, pray for an Order as follows:

> A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in Fed. R. Civ. P. 23, and certifying the Class defined herein;
>
> B.    Designating Plaintiffs as representatives of the Class, and their undersigned counsel as Class Counsel;
>
> C.    Entering judgment in favor of Plaintiffs and the Class and against Defendants, jointly and severally;
>
> D.    Ordering disgorgement of the money that Plaintiffs and the Class paid to purchase or rent the Testing Devices, and awarding the disgorged money as Restitution Damages to Plaintiffs and the Class, and any other equitable relief that may be appropriate, and interest thereon, as allowed or required by law;
>
> E.    Awarding Plaintiffs reasonable attorneys' fees and costs, and interest thereon, as allowed or required by law; and
>
> F.    Granting all such further and other relief as the Court deems just and appropriate.

## **JURY DEMAND**

Plaintiffs demand a trial by a jury on all counts so triable.

Dated:  June 17, 2016

**SULLIVAN, KRIEGER, TRUONG,
SPAGNOLA & KLAUSNER, LLP**

By:  s/Adam M. Tamburelli
      Adam M. Tamburelli (SBN: 301902)

1

2
                          Attorneys for: Plaintiffs ALLISON
3
                          TURNER and ALLEN SCIOLI,
4
                          individually, and on behalf of all others
5
                          similarly situated.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28